1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9   Lance Brown,                              No. CV-18-03418-PHX-JJT

10                    Plaintiff,              **ORDER**

11  v.

12  Dignity Health,

13                    Defendant.

14

15          At issue is Defendant Dignity Health's Motion for Summary Judgment (Doc. 52,

16  MSJ), to which Plaintiff Lance Brown filed a Response (Doc. 56, Resp.) and Defendant

17  filed a Reply (Doc. 59, Reply). The Court has reviewed the parties' briefs and finds this

18  matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons

19  set forth below, the Court will grant Defendant's Motion for Summary Judgment under

20  Federal Rule of Civil Procedure 56(c).

21  **I.      BACKGROUND**

22          In March 2016, Defendant Dignity Health hired Plaintiff Lance Brown, an African

23  American, to work as a Rehab Technician in the Neuro Rehabilitation Department at

24  St. Joseph's Hospital and Medical Center (SJHMC). In March 2018, Plaintiff's co-worker,

25  Elva Lafforthun, complimented him in the presence of Marsha Branche-Spelich, the

26  department manager and Plaintiff's supervisor. Plaintiff alleges that Branche-Spelich then

27  "slapped [him] in the face three times, and grabbed [him] by [his] cheek and called [him]

28  a good boy." While the incident did not physically hurt Plaintiff or leave a mark on his

cheek, Plaintiff claims that Branche-Spelich calling him a "good boy" was racially motivated. (Doc. 1, Compl. ¶ 14.) Plaintiff asserts that Branche-Spelich's use of the phrase "good boy" was tantamount to the tradition of Caucasians calling African American males "boy" in order to degrade and belittle them. (Resp. at 2.) Branche-Spelich claims that she used the phrase "good boy" to indicate agreement with Lafforthun's compliment and that her action was a gentle touch of Plaintiff's face. (Doc. 53, Def.'s Statement of Facts (DSOF) ¶¶ 27–28.)

Plaintiff reported the incident to Stephanie Kern, Senior Human Resources Consultant. Plaintiff alleges he requested that Kern keep his complaint confidential, transfer him to a different department, protect him from retaliation, and terminate his supervisor. (Doc. 58, Pl.'s Statement of Facts (PSOF) ¶¶ 7–8.) Following Plaintiff's complaint, Kern spoke with Lafforthun, Branche-Spelich, and Branche-Spelich's supervisor, Christopher St. Clair. Lafforthun reported that she heard Branche-Spelich's "praise of [Plaintiff's] work" the day of the alleged incident but did not see her touch Plaintiff's face. Kern and St. Clair then met with Branche-Spelich, explaining to her how Plaintiff had perceived her actions and that her conduct was inappropriate. Plaintiff alleges that the steps Kern took indicate that she did not take his complaint seriously and that no disciplinary measures were taken against Branche-Spelich. (Resp. at 2.) Following the March 2018 incident, Branche-Spelich and Plaintiff had minimal contact. Branche-Spelich told Plaintiff that she did not want to be alone with him anymore and preferred to be in the presence of a third party when they were together.

In April 2018, Plaintiff picked up some night shifts in his department. The night shift charge nurse reported concerns about Plaintiff's performance to Branche-Spelich. Specifically, he told her "that there were some issues with [Plaintiff] disappearing for periods of time . . . where they couldn't find him on the unit, and they were unaware that he was gone off the unit, and that he was not in his assigned area on the unit." In May, Branche-Spelich learned that Plaintiff had applied for a transfer to a different department. Plaintiff alleges that following the March 2018 incident, his work environment was

uncomfortable and he attempted to avoid Branche-Spelich, leading him to seek a transfer. (Resp. at 3.) Ultimately, Branche-Spelich denied Plaintiff's transfer request. Plaintiff alleges that Branche-Spelich's denial was retaliation for his report to HR accusing her of race discrimination. (Resp. at 3.) According to Defendant, Branche-Spelich denied Plaintiff's request because he was still under a corrective action from a written warning issued in January[1] for attendance problems and because of the night shift charge nurse's recent report about his poor performance. (DSOF ¶ 40.)

On May 17, 2018, Plaintiff worked as a "sitter." Sitters monitor patients who have suicidal or homicidal tendencies or patients who may pull out their IVs or other medical equipment. A sitter is required to remain attentive and have eyes on the patient at all times to ensure the patient's safety. During Plaintiff's shift, the charge nurse, Tony Crawford-Jonas, approached him, told him that she believed that he was sleeping, and sent him to the staffing office. The staffing office informed the house manager, Stacy Youngkrantz-Bricklin, of the situation. Youngkrantz-Bricklin spoke to Crawford-Jonas and another nurse working that evening, Sarah Christopher. Both women reported that they had witnessed Plaintiff sleeping and had to wake him. Youngkrantz-Bricklin completed an observation checklist and was concerned that Plaintiff might be impaired. She requested that Plaintiff take a drug test. Initially, Plaintiff consented to taking a drug test, but when Youngkrantz-Bricklin asked for his car keys, Plaintiff refused to hand them over and left the hospital without being tested. Defendant considers an employee's refusal to submit to a drug test to be a serious offense. Following the incident, Defendant placed Plaintiff on administrative leave, pending investigation.

After Kern learned of the reports of Plaintiff sleeping and his possible impairment, she spoke with Youngkrantz-Bricklin and one of the nurses who claimed that she had observed Plaintiff sleeping and had to wake him. Kern concluded that Plaintiff had been

---

[1] Under Defendant's policy, written warnings are generally in effect for one year. (DSOF ¶ 12.) Also, under Defendant's policy, an employee who has an active written warning is not eligible to transfer to another department unless the managers of each department approve of it. (DSOF ¶ 39.)

sleeping on the job. Defendant's Rules of Conduct specifically provide that "sleeping or the appearance of sleeping" on the job is prohibited and employees may be terminated for such conduct. (DSOF ¶ 68.) Accordingly, Kern recommended that Defendant terminate Plaintiff's employment. Kern and Branche-Spelich met with Plaintiff and presented him with a termination form that listed refusal to take a drug test and sleeping on the job as the reasons for his termination. Plaintiff objected to listing refusal to take a drug test and Kern agreed to remove it. Plaintiff then agreed to sign the form, which stated that he was terminated for the sole reason of sleeping on the job. Plaintiff claims that during the meeting, Branche-Spelich touched his thigh and told him that his termination had nothing to do with his complaint about her to HR in March. (PSOF ¶ 47.) Also, Plaintiff alleges a discrepancy between how Kern handled the investigation into the accusation that Plaintiff was sleeping, which she purportedly took "very seriously," and her alleged failure to investigate and take seriously Plaintiff's accusations against Branche-Spelich. (Resp. at 3.)

Kern claims that in her experience working for Defendant, every person discovered sleeping while at work was subsequently terminated. Similarly, Branche-Spelich claims she is aware of only one incident where a sitter who appeared to be sleeping on the job received a final written warning instead of termination. Following that incident, HR informed her that the employee should have been terminated. Over the past five years, Defendant has terminated ten employees for sleeping or the appearance of sleeping on the job. Of these employees, two were Caucasian, three were African American (including Plaintiff), four were Hispanic, and one was multiracial.

Plaintiff's Complaint raises three claims against Defendant: (1) that Defendant subjected him to a hostile work environment based on race in violation of Title VII or 42 U.S.C. § 1981[2]; (2) that Defendant subjected him to disparate treatment due to his race

---

[2] In analyzing a claim under Section 1981, "the legal principles [that] guid[e] a court in a Title VII dispute apply with equal force." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003). Thus, the standard for establishing a hostile work environment claim is identical whether the claim arises under Section 1981 or Title VII.

in violation of Title VII and § 1981[3]; and (3) that Defendant retaliated against him for reporting Branche-Spelich's alleged discriminatory conduct in violation of Title VII. Defendant now moves for summary judgment on all of Plaintiff's claims.

## II.   LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

---

[3] The standard for establishing a race discrimination claim is identical whether the claim arises under Section 1981 or Title VII. *See Manatt*, 339 F.3d at 797.

which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

## III.    ANALYSIS

### A.    Claim of Hostile Work Environment Based on Race

To establish a *prima facie* case for a hostile work environment claim, Plaintiff must raise a triable issue of fact as to whether (1) Defendant subjected him to verbal or physical conduct based on his race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). "Allegations of a racially hostile workplace must be assessed from the perspective of a reasonable person belonging to the racial . . . group of the plaintiff." *Id.*

Defendant does not dispute that Branche-Spelich's conduct was unwelcome. Thus, the Court will focus on whether Plaintiff can meet the first and third prongs of the *prima facie* case for a hostile-work environment claim.

### 1.    Verbal or Physical Conduct Based on Race

The Supreme Court has made clear that use of "boy" as a moniker "will not always be evidence of racial animus," and whether the term is discriminatory depends on "various factors, including context, inflection, tone of voice, local custom, and historical usage." *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 456 (2006). "It is the plaintiff's burden to provide evidence beyond his or her own subjective assertions of discrimination suggesting that a facially neutral term or phrase was, in fact, discriminatory." *Robertson v. Dodaro,* 767 F.Supp.2d 185, 2011 WL 768111, at *7 (D.D.C. Mar. 7, 2011) (citing *Ash,* 546 U.S. at 456).

Plaintiff alleges that Branche-Spelich's conduct—slapping Plaintiff's face three times, grabbing his cheek, and calling him "good boy"—constitutes verbal or physical conduct based on his race. (Resp. at 5.) Defendant contends Branche-Spelich's use of the phrase "good boy" fails to amount to evidence of conduct based on race and Plaintiff's claim that the phrase reflected racial animus is unsupported by objective evidence. (MSJ at 5–6.)

1    The Court agrees that Plaintiff fails to proffer evidence sufficient to create a genuine
2    issue of material fact as to whether Defendant's actions were racially adverse. To begin
3    with, unlike in *Ash*, here, Branche-Spelich used the phrase "good boy," not "boy." Beyond
4    Plaintiff's subjective feelings of humiliation and anger, Plaintiff fails to point to objective
5    evidence demonstrating that calling an African American male "good boy," as opposed to
6    just "boy," always reflects racial animus. While Branche-Spelich's comment might have
7    offended Plaintiff, the Court must review allegations of a racially hostile workplace "from
8    the perspective of a reasonable person belonging to the racial . . . group of the plaintiff."
9    *Surrell*, 518 F.3d at 1108. This review requires an objective showing of racial hostility.
10   Here, without evidence beyond Plaintiff's own subjective assertion, Plaintiff fails to
11   establish that Branch-Spelich's use of "good boy" was in fact racially discriminatory. *See*
12   *Taylor v. AFS Techs., Inc.*, 2011 WL 1237609, at *2 (D. Ariz. Apr. 4, 2011) ("[B]ecause
13   [defendant's] use of the term 'boy' was not tied directly to Plaintiff's termination or any
14   other adverse employment action, 'it is weak evidence and not enough to create an
15   inference of [race] discrimination.'"); *Medina v. Donahue*, 854 F. Supp. 2d. 733, 751–52
16   (N.D. Cal. 2012) (concluding the plaintiff failed to establish a *prima facie* case of a hostile
17   work environment because the plaintiff "presented no evidence of hostile conduct based
18   on race besides her conclusory 'gut feeling'"). Because the only evidence of race
19   discrimination is Plaintiff's "gut feeling," no reasonable jury could find that the one-time
20   occurrence of Branche-Spelich calling Plaintiff "good boy" amounted to race
21   discrimination.

22   Plaintiff argues that Branche-Spelich's comment cannot be viewed alone and must
23   be viewed in connection to her physical conduct. (Resp. at 6.) However, to the extent a
24   context argument can be made, it favors Defendant. Branche-Spelich called Plaintiff "good
25   boy" after a coworker complimented him for his work performance. (*See* Doc. 57, Pl.'s
26   Controverting Statement of Facts (PCSOF) ¶ 21.) The evidence conclusively demonstrates
27   that Branche-Spelich intended to build Plaintiff up rather than cut him down. Other than
28   Plaintiff's "gut feeling," no evidence points to Branche-Spelich's conduct making her

comment racially charged. As Defendant amply demonstrates, the cases Plaintiff cites are factually distinct and do not support his claim. In *Hodges v. CGI Federal Defense & Intelligence*, the court concluded that the question, "Any word on our boy?" could "conceivably be racially changed" given the context: an email between supervisors regarding the plaintiff's termination. 2014 WL 5528228, at *9 (D. Haw. Oct. 31, 2014). And in *Jackson v. ABC Nissan*, the court found evidence of racial discrimination where the plaintiff's two supervisors each referred to him as "boy" "more than ten times" in a workplace where "racial slurs . . . were made on a regular basis," and the plaintiff confronted his supervisors about how the use of the term was disrespectful, but they continued to use the term anyway. 2006 WL 2256908, at *2, *9 (D. Ariz. Aug. 4, 2006). Conversely, here, Branche-Spelich called Defendant "*good* boy" in a context that paints the use of the phrase as a compliment, and the phrase was used once in a workplace without a history of racially charged language. To the extent that context clarifies the meaning of Branche-Spelich's comment, it cuts against Plaintiff's claim that her calling him "good boy" implicates racial animus.

Finally, citing *McGinest v. GTE Service Corp.*, Plaintiff claims that Defendant's failure to take seriously and formally investigate Plaintiff's allegation is evidence of conduct based on race. 360 F.3d 1103 (9th Cir. 2004). Defendant contends that the comparison to *McGinest* is inapt because that case simply holds that an employer cannot escape liability for coworker harassment when it neglects to take appropriate steps to remedy reports of harassment. (Reply at 4 (citing *McGinest*, 360 F.3d at 1120–21).) The Court agrees with Defendant. Contrary to Plaintiff's assertion, an employer's inadequate remedial measures cannot be used as evidence of racially adverse conduct. *See McGinest*, 360 F.3d at 1120–21. Moreover, unlike in *McGinest*, Defendant's response—speaking with the employee who witnessed the interaction and then counseling Branche-Spelich about her conduct—proved effective. Plaintiff brought no subsequent complaints and does not allege any additional incidents involving Branche-Spelich.[4] (DSOF ¶ 32.) In sum, based

---

[4] Plaintiff's conclusory statement that he did not return to HR with additional complaints

on the evidence, no reasonable jury could conclude that Plaintiff experienced a hostile work environment based on race. Thus, his claim fails as a matter of law.

### 2.    Severe or Pervasive Conduct

Even if Plaintiff succeeded in proving that he suffered racially discriminatory conduct, he cannot show that the conduct was severe or pervasive. In assessing the third prong of the *prima facie* case for a hostile-work environment claim, the conduct must be severe and pervasive enough to both subjectively and objectively create an abusive environment. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995). While there is no exact test to determine whether the environment is objectively abusive, factors to consider include the frequency and severity of the conduct. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22–23 (1993). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). Although "an isolated incident of harassment by a co-worker will rarely . . . give rise to a reasonable fear" that the harassment is a permanent condition of employment, an employer may be liable if the plaintiff shows that she feared she "would be subject to such misconduct in the future because . . . [defendant] tolerated" the harasser's conduct. *Brooks v. City of San Mateo*, 229 F.3d 917, 923–24 (9th Cir. 2000).

Plaintiff's allegations regarding the March 2018 incident, even if true, are insufficient to rise to the level of severe or pervasive conduct. As discussed above, Plaintiff's evidence is insufficient to demonstrate that Branche-Spelich's comment, "good boy," was racially charged. Furthermore, while Plaintiff alleges that Branche-Spelich slapped him in the face three times, he admits that the "slaps" did not harm him or leave a mark, and an employee who witnessed the event reported that she did not recall seeing the alleged slaps. (PCSOF ¶¶ 21, 26.) The case law makes clear that a single, isolated incident of harassment must be "extremely serious" to create an abusive working environment. *Faragher*, 524 U.S. at 778; *compare Brooks*, 229 F.3d at 926–27 (single incident in which

because it had mishandled his complaint against Branche-Spelich, without more, does not demonstrate that he experienced additional discriminatory behavior at the hands Branche-Spelich or any other employee of Defendant. (*See* PSOF ¶ 48.)

- 9 -

fellow employee touched plaintiff's stomach and then her breast under her sweater did not constitute severe or pervasive conduct)[5]; *and Perez v. Norwegian-Am. Hosp. Inc.*, 93 F. App'x. 910, 914 (7th Cir. 2004) (single instance of colleague slapping plaintiff on the buttocks not objectively abusive); *with Al Dabbagh v. Greenpeace, Inc.*, 873 F. Supp. 1105, 1108 (N.D. Ill. 1994) (single incident was held to be sufficient where the assailant "slapped [plaintiff], tore off her shirt, beat her, hit her on the head with a radio, choked her with a phone cord and ultimately forced her to have sex with him"). Situated in this case law, the evidence Plaintiff has presented falls well short of the "extremely serious" threshold necessary for an isolated incident to create an objectively abusive workplace.

Plaintiff's claim that Defendant failed to "formally investigate" his complaint and take action to protect him from further discrimination and retaliation does not change this conclusion. To the extent the evidence even begins to support Plaintiff's claim, an employer's failure to investigate a claim of harassment does not constitute evidence of racially hostile conduct, as discussed above.

Moreover, contrary to Plaintiff's claim, *Ellison v. Brady* does not support his assertion that the mere continued presence of Branche-Spelich contributed to an abusive work environment. 924 F.2d 872 (9th Cir. 1991). *Ellison* establishes that "in some cases the mere presence of an employee *who has engaged in particularly severe or pervasive harassment* can create a hostile working environment." *Id.* at 883 (emphasis added). Plaintiff's reliance on *Ellison* is misplaced because he has failed to prove that Branche-Spelich engaged in severe or pervasive harassment in the first instance.

Finally, the Court agrees with Defendant that the denial of Plaintiff's transfer request, upon which he bases his discrimination and retaliation claims, cannot also provide the basis for his hostile workplace claim. (*See* Reply at 5–6.) The denial of Plaintiff's transfer request is a discrete act. The controlling case law makes clear that a discrete act is not the kind of conduct that supports hostile work environment claims. *See National R.R.*

---

[5] "Because the elements to prove a hostile work environment are the same for both racial harassment and sexual harassment, cases analyzing both types of harassment are relevant to [the] analysis." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

*Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."); *Rekow v. Sebelius*, 2011 WL 1791272, at *3 (D. Ariz. May 11, 2011) ("Because the Supreme Court has explicitly differentiated between discrete employment acts and a hostile work environment, many courts have concluded that a discrete act cannot be part of a hostile work environment claim."); *Moore v. King Cty. Fire Prot. Dist. No. 26*, 2005 WL 2898065, at *3 (W.D. Wash. Oct. 31, 2005) ("*Morgan* compels the conclusion that the universe of 'discrete acts,' each of which could support a separate retaliation claim, is mutually exclusive of the universe of acts that can comprise a hostile work environment claim."). In sum, for the additional reason that Plaintiff's evidence is insufficient to demonstrate the severe-and-pervasive prong of the hostile work environment claim, the claim fails as a matter of law.

### B.   Disparate Treatment Claim

In order to show disparate treatment under Title VII, Plaintiff must first establish a *prima facie* case of discrimination as the United States Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Specifically, [Plaintiff] must show that (1) [Plaintiff] belongs to a protected class; (2) [Plaintiff] was qualified for the position; (3) [Plaintiff] was subjected to an adverse employment action; and (4) similarly situated [members of different race] were treated more favorably . . . ." *Villiarimo*, 281 F.3d at 1062 (citing *McDonnell Douglas*, 411 U.S. at 802).

"If the plaintiff establishes a *prima facie* case, the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action . . . . If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (internal citations and quotations omitted). A plaintiff may rely on circumstantial evidence to demonstrate pretext,

but such evidence must be both specific and substantial. *Id.* At the last step, if the plaintiff can show pretext, the only remaining issue is whether discrimination occurred or not. *Id.*

Plaintiff alleges he was performing his job satisfactorily and experienced disparate treatment when Defendant denied his transfer request and terminated him for sleeping on the job. (Resp. at 12.) While Defendant does not dispute that Plaintiff belongs to a protected class and suffered an adverse employment action, Defendant argues that Plaintiff's claim fails because he was not performing his job satisfactorily. (MSJ at 8.) Even if he was, Defendant argues that Plaintiff fails to produce specific and substantial evidence of disparate treatment. (MSJ at 9.)

The Court agrees that Plaintiff fails to create a genuine issue of material fact as to whether he can show a *prima facie* case of discrimination. Undisputed evidence shows Plaintiff's job performance was unsatisfactory. In January 2018, Plaintiff received a corrective action for attendance problems, less than six months before his transfer request denial and termination. Defendant considers corrective actions active for one year. Additionally, one month before Branche-Spelich learned of Plaintiff's transfer request, the night shift charge nurse reported concerns about Plaintiff's job performance, including issues with him disappearing for periods of time. Finally, prior to his termination, and the principal cause of it, Plaintiff was reported to have been sleeping while working as a sitter—an offense that warrants immediate termination under Defendant's policies. The evidence thus shows that at the time Plaintiff experienced adverse employment actions, he was not performing his job satisfactorily. *See Nganje v. CVS RX Servs., Inc.*, 2015 WL 4173269, at *9 (D. Ariz. July 10, 2015) (granting summary judgment dismissing disparate treatment claim because "[g]iven the discipline plaintiff received in 2010–2012 and the 'needs improvement' performance evaluation she received in 2012, no reasonable jury could conclude that she was performing her job satisfactorily").

Plaintiff's evidence is also insufficient to demonstrate the fourth element of the *prima facie* case because he has made no showing of disparate treatment. Plaintiff did not even attempt to identify a single employee whose transfer request was granted—let alone

a similarly-situated employee outside of his protected class. *See Jones v. Bayer Healthcare LLC*, 302 F. App'x 590, 591 (9th Cir. 2008). Plaintiff claims Defendant's reasons for denying his transfer request were pretextual and HR stonewalled his transfer attempts. Even if true, these facts in no way constitute evidence of disparate treatment.

Similarly, Plaintiff fails to create a genuine issue of material fact as to whether his termination constituted disparate treatment. Plaintiff contends that evidence of disparate treatment exists because Defendant had previously not terminated one employee who, like him, was accused of sleeping on the job. (Resp. at 14.) Fatal to Plaintiff's contention, however, is that he fails to indicate this employee's race. (*See* Resp. at 14.) Consequently, the Court has no way of knowing whether disparate treatment actually occurred. In any event, the facts in the incident that Plaintiff references are dissimilar from those alleged in the incident involving him. In that incident, a nurse seen holding a baby with her eyes closed explained that she had closed her eyes to help her listen to the baby's heartbeat. (DSOF ¶ 81.) Unlike Plaintiff, the employee had a legitimate reason for having her eyes closed and erased any suspicion she was asleep.

Moreover, Defendant provides ample evidence that similarly situated employees outside of Plaintiff's protected class were, in fact, treated in the exact same manner as him. During the past five years at SJHMC, Defendant terminated two Caucasian employees, four Hispanic employees, three African American employees (including Plaintiff), and one multiracial employee for sleeping or the appearance of sleeping on the job. (DSOF ¶ 87.) *See Nelson v. Quality Foods Ctrs., Inc.*, 368 F. App'x 817, 819 (9th Cir. 2010) (The plaintiff failed to establish *prima facie* case where two other store managers were "like Nelson, transferred to another store following a substandard performance review, and then demoted when the store closed. These individuals . . . are 'similarly situated' to Nelson and were not treated more favorably than Nelson."). In sum, Plaintiff fails to establish a *prima facie* case of discrimination because he provides no evidence, much less specific and substantial evidence, that similarly situated employees outside of his protected class received more favorable treatment.

- 13 -

Plaintiff alleges two more incidents of disparate treatment, but neither one constitutes an adverse employment action and thus cannot be grounds for a disparate treatment claim. Plaintiff alleges that Defendant conducted a thorough investigation of the report of him sleeping despite not taking seriously or investigating his complaint against Branche-Spelich. (Resp. at 14.) Even if the evidence supported this allegation, the Court agrees with Defendant—and Plaintiff cites no authority to the contrary—that an inadequate investigation is not an adverse employment action under Title VII. *Taylor*, 2011 WL 137609, at *4, n.3 (failure to investigate does not constitute a materially adverse action sufficient to support Title VII retaliation claim); *Cozzi v. Cty. of Marin*, 787 F. Supp. 2d 1047, 1069 (N.D. Cal. 2011) ("the failure to conduct an adequate investigation after an alleged act of discrimination cannot be . . . considered an action that reasonably would deter an employee from engaging in the protected activity under Title VII"). Likewise, the fact that Branche-Spelich has not called any non-Black employee a good boy and "slapped" their face is irrelevant because the March 2018 incident is not an adverse employment action for the purposes of a Title VII disparate treatment claim.

Even if Plaintiff succeeded in meeting his burden of establishing a *prima facie* case, his claim of disparate treatment would still fail because the evidence shows Defendant had legitimate, nondiscriminatory reasons for its actions, and Plaintiff failed to show these reasons were pretextual. Defendant denied Plaintiff's transfer request because he had an active corrective action and Branche-Spelich had concerns about his performance on the night shift. Plaintiff was terminated because he was caught sleeping on the job as a sitter. Plaintiff does not dispute—nor could he under Defendant's policies—that these are legitimate reasons supporting Defendant's actions. *See, e.g.*, *Nguyen v. Dept. of Navy*, 412 F. App'x 926, 929 (9th Cir. 2011) (finding that plaintiff's "low performance ratings and complaints from her customers, poor attendance and habitual tardiness, misuse of the government telephones and computers . . ." were legitimate, nondiscriminatory reasons).

Nor does Plaintiff point to evidence showing the reasons for his termination were pretextual. (*See* Resp. at 11–15.) Plaintiff does allege that an email Branche-Spelich wrote

demonstrates that Plaintiff's corrective action and performance concerns were pretext for blocking his transfer request. However, Plaintiff mischaracterizes the facts. The very email Plaintiff relies on for support—especially when placed in context of the entire email correspondence—shows that the corrective action and "other performance issues" counseled against allowing Plaintiff's transfer. (Doc. 58-4 at 146–52.) In refuting allegations of pretext, "courts only require that an employer honestly believed its reasons for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). Beyond conclusory statements, Plaintiff fails to provide any evidence that Defendant did not genuinely believe its stated reasons for denying his transfer. Thus, in addition to failing to establish a *prima facie* case, Plaintiff's disparate treatment claim is defeated as a matter of law at the burden shifting stage. The Court will therefore grant Defendant's request for summary judgment on Plaintiff's Title VII claim of disparate treatment.

### C.    Retaliation Claim

Pursuant to the *McDonnell Douglas* framework governing Title VII retaliation claims, "a plaintiff must first establish a *prima facie* case of retaliation." *Cheeks v. Gen. Dynamics*, 22 F. Supp. 3d 1015, 1035 (D. Ariz. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). "If [the plaintiff] provides sufficient evidence to show a *prima facie* case of retaliation, the burden then shifts to the [defendant] to articulate a legitimate, non-retaliatory reason for its actions." *Porter v. California Dep't of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005) (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). "Once the defendant has presented a purpose for the action, the plaintiff bears the ultimate burden of providing evidence that the defendant's reason is 'merely a pretext for a retaliatory motive.'" *Cheeks*, 22 F. Supp. 3d at 1035 (quoting *Porter*, 419 F.3d at 894).

An employee engages in a "protected activity" when the employee complains about or protests conduct that the employee reasonably believes constitutes an unlawful employment practice. *See Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). For the purposes of a retaliation claim, an adverse employment action is an action that "is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). Plaintiff must also prove that any adverse actions were caused by his protected activity. The Supreme Court has established that "retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

The first two prongs of Plaintiff's *prima facie* case are undisputed. Regarding the causation prong, Plaintiff asserts it is satisfied alone by the temporal proximity between Plaintiff's report to HR and Defendant's denial of his transfer request and his eventual termination. (Resp. at 15–16.) Defendant argues that, despite temporal proximity, Plaintiff fails the causation prong because of significant intervening events that break the chain of causation. (MSJ at 13.) The Court agrees with Defendant. There is no evidence that Plaintiff's report to HR was a motivating factor in Defendant's decision to deny Plaintiff's transfer request and terminate him, much less the but-for cause of these decisions. Rather, the undisputed evidence shows that the intervening events of a poor performance report from the night shift charge nurse, combined with his corrective action, informed Branche-Spelich's decision to deny Plaintiff's transfer request, and reports of Plaintiff sleeping at work caused his termination. Indeed, Plaintiff admits that Branche-Spelich explicitly told him that his report to HR had nothing to do with his termination. (PSOF ¶ 47.) Given the significant intervening events, Plaintiff cannot produce sufficient evidence to create a genuine issue of fact as to whether a causal link exists between Plaintiff's report to HR and Defendant's adverse employment actions. *See Phillips v. Victor Cmty. Support Servs., Inc.*, 692 F. App'x 920, 922 (9th Cir. 2017) (concluding the plaintiff's "violations of [the

defendant's] procedure and failure to timely renew her license . . . create intervening causes that disrupt any inferences of a direct causal link").

In any event, even if Plaintiff succeeded in proving his *prima facie* case, Plaintiff's retaliation claim would fail for the same reasons his disparate treatment claim fails. As in his discrimination claim, Plaintiff purports that Branche-Spelich's emails reveal that the proffered reasons for denying his transfer were pretextual. As articulated above, Branche-Spelich's emails substantiate Defendant's claim that she did not agree to transfer Plaintiff because he was on corrective action and had received a report of poor performance. Plaintiff has mischaracterized the facts and has pointed to no evidence to show pretext for his retaliation claim.

Likewise, Plaintiff cannot show that the reason for his termination—sleeping on the job—was pretextual. Two different employees reported to Youngkrantz-Bricklin that they witnessed Plaintiff sleeping. Kern spoke with Youngkrantz-Bricklin and one of the witnesses. Plaintiff presents no evidence that Kern did not honestly believe the accounts of those individuals. *See Villiarimo*, 281 F.3d at 1063. Nor does he attempt to offer any evidence challenging the legitimacy of these reports—both of which were made by employees unaware of Plaintiff's complaint against Branche-Spelich. Plaintiff fails to present any evidence that the decision-makers did not honestly believe their reasons for his termination.

Finally, Plaintiff claims that he suffered retaliation when Defendant refused to allow him to share his side of the story before his termination. Plaintiff contrasts his treatment with that of the nurse who was discovered in the NICU with her eyes closed while holding an infant and was ultimately not terminated after explaining the reason for closing her eyes. Here, Plaintiff conflates his retaliation claim with his discrimination claim. The Court has already explained why this evidence failed to show disparate treatment. *See Taylor*, 2011 WL 137609, at *4, n.3; *Cozzi*, 787 F. Supp. 2d at 1069. Likewise, it is insufficient evidence to prove retaliation.

For all the foregoing reasons, Plaintiff has failed to raise a genuine issue of material fact in regard to his retaliation claim. The Court will therefore grant Defendant's request for summary judgment on this claim.

**IV.    CONCLUSION**

The Court grants Defendant Dignity Health's Motion for Summary Judgment on all three of Plaintiff's claims arising under Title VII and 42 U.S.C. § 1981. Plaintiff fails to produce sufficient evidence to create a genuine issue of material fact as to whether he was subjected to a hostile work environment, experienced disparate treatment, or suffered retaliation.

**IT IS THEREFORE ORDERED** granting Defendant Dignity Health's Motion for Summary Judgment (Doc. 52) on all of Plaintiff Lance Brown's claims.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment accordingly and close this case.

Dated this 19th day of June, 2020.

Honorable John J. Tuchi
United States District Judge